IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| SOFTWARE CONSULTANTS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SHANKAR RACHAKONDA, ) <br> RAMA RACHAKONDA, ) <br> SCI IT SOLUTIONS PRIVATE LIMITED, ) <br> and RADIANT CREATIVE GROUP, LLC, ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:15-cv-1145 <br><br> Hon. Liam O'Grady |

### Memorandum Opinion

This suit arises out of the demise of a business relationship between Shankar and Rama Rachakonda (individually, "Shankar" and "Rama") and Naveen Hota. The Rachakondas and Hota own Software Consultants, Inc. ("SCI"), a technology consulting business in Vienna, Virginia. When the relationship between Hota and the Rachakondas began to sour, the Rachakondas allegedly took a number of actions, both individually and through other entities, that harmed SCI. SCI sued the Rachakondas and two of the Rachakondas' companies, SCI IT Solutions Private Limited. ("SCI IT") and Radiant Creative Group, LLC ("Radiant"), alleging breach of fiduciary duty, fraud, constructive fraud, tortious interference with contract and/or contract expectancy, business conspiracy, conversion, deceptive advertising, and violation of the Lanham Act.

The matter is presently before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Stay or Remand to State Court. (Dkt. No.

1

17). Plaintiff has opposed the motion. Pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7(J), the Court will dispense with an oral hearing and rule on the briefs submitted. For the reasons stated herein, the motion is denied.

## I. Background

### A. Allegations in the Amended Complaint

Because this is a motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true. SCI is an IT consulting company in Vienna, Virginia that provides "services to a variety of businesses throughout the Washington, D.C. metropolitan area." Am. Compl. ¶ 8. SCI is owned by Naveen Hota, Shankar Rachakona, and Rama Rachakonda. Through March 2015, Rama served as SCI's treasurer and Shankar as SCI's CEO.

Defendant Radiant is a Texas limited liability company that, upon information and belief, the Rachakondas acquired in 2008 and in which the Rachakondas maintain a substantial ownership interest. Defendant SCI IT is an Indian corporation that was formed in 2000 and that was later authorized to do business in Virginia in 2010. Shankar serves as SCI IT's CEO and "owns a significant portion of [its] stock." *Id.* ¶ 13. SCI "understood that the purpose of SCI IT was to hire individual consultants holding L-1 visas (which require the worker to be employed by a foreign company) and to make those individuals available to SCI for use on SCI projects." *Id.* ¶ 15. Before 2014, SCI IT's only business was to provide consultants to SCI to facilitate SCI's contracts. It did not have its own clients.

The relationship between Shankar and Hota "began to seriously deteriorate in 2013 as they were increasingly at odds regarding the management, control and direction of SCI." *Id.* ¶ 25. Throughout 2014 the Rachakondas and Hota explored possible options for parting ways, including selling SCI, negotiating a buy/sell agreement, and/or dividing SCI's assets into

2

separate companies. "By late 2014, Shankar unilaterally decided to . . . start dividing SCI's assets by diverting them to SCI IT and/or Radiant." *Id.* ¶ 29. Shankar assigned SCI contracts to SCI IT and Radiant and transferred at least twelve SCI employees and subcontractors to SCI IT and Radiant. Shankar also caused SCI IT and Radiant "to compete directly against SCI by seeking business opportunities that rightfully belonged to SCI." *Id.* ¶ 56. In its subsequent investigation of Shankar's wrongdoing, SCI also discovered that Shankar had funneled at least $400,000 from SCI using fraudulent invoices.

In April 2015, after all affiliation between SCI and SCI IT had terminated, SCI IT realized that it might be denied access to the domain name that SCI had established, <scigrp.com>, and proceeded to copy the logos and content from the site in order to replicate it on a new site. SCI and SCI IT's websites "have a strikingly similar look and feel." *Id.* ¶ 132. The websites use the same colors and SCI IT's logo is "nearly identical" to SCI's—"primarily consisting of a triangle composed of six blocks, arranged in three rows, with the top row (a single block) being dark blue, the middle row (two blocks) being a lighter blue, and the last row (three blocks) being green." *Id.* SCI IT's logo "features the letters 'SCI' (and in the same font employed on the SCI website) with 'IT SOLUTIONS' in significantly smaller type beneath the letters 'SCI.'" *Id.*

The Amended Complaint also alleges that representations made on SCI IT's website are false and misleading. For example, "[t]he SCI IT website touts alleged experience and accomplishments that are, in fact, the experience and accomplishments of SCI and *not* SCI IT." *Id.* ¶ 133. The "Industries" page on the website lists experience with various companies, but each of those contracts were obtained and serviced by SCI. The website also asserts that SCI IT

3

"works in close concert with . . . Software Consultants, Inc." and "prominently features the SCI Group's logo," despite the prior termination of "any affiliation." *Id.* ¶¶ 129, 134.

B. Procedural Background

In July 2015, SCI sued the Rachakondas, SCI IT, and Radiant in Fairfax County Circuit Court. Defendants subsequently removed the suit to this Court based on the presence of the Lanham Act claim. (Dkt. No. 1). Following an amendment, the complaint presently alleges nine counts. At issue here is Count VIII, the Lanham Act claim against SCI IT, which presents the only basis for federal jurisdiction. In August 2015, the Rachakondas, SCI Group Holdings, Inc., SCI IT, and Radiant sued Naveen Hota, Lakshmi Hota, and SCI in Montgomery County Circuit Court (the "Maryland Action"). Am. Compl. ¶ 26. SCI attached the Maryland complaint as an exhibit to the Amended Complaint. *Id.* Ex. 1.

II. **Standard of Review**

To determine whether a complaint can survive a motion to dismiss, the Court "evaluate[s] only whether the complaint states a claim to relief that is plausible on its face." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal quotation marks omitted). In undertaking this analysis, the Court "construe[s] facts in the light most favorable to the plaintiff and draw all reasonable inferences in [its] favor." *Id.* (internal quotation marks omitted).

III. **Discussion**

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction or alternatively to stay the case. Specifically, they ask the Court to find that the Lanham Act count fails to state a claim or is time-barred and consequently, that no basis for federal jurisdiction

remains. Alternatively, Defendants ask the Court to find the Maryland Action is a parallel action and that extraordinary circumstances exist such that abstention is warranted.

A. <u>The Lanham Act Claim (Count VII)</u>

Count VIII of the Amended Complaint alleges a "Violation of 15 U.S.C. § 1125 (Lanham Act)." Am. Compl. at 20. The Amended Complaint does not specify the type of Lanham Act violation being alleged under § 1125. As a general matter, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, has two prongs: "(1) infringement of even unregistered marks, names and trade dress, and (2) false advertising." 5 McCarthy on Trademarks and Unfair Competition § 27:9 (4th ed.) (internal quotation marks omitted); *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014) (stating that § 1125 "creates two distinct basis of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)"). In their motion to dismiss, Defendants presume SCI is alleging trademark infringement and base their arguments on an infringement claim. In its opposition, SCI argues that the allegations in the Amended Complaint support both an infringement claim and a false advertising claim.

i. *Infringement*

A claim for trademark infringement has five elements. A plaintiff must establish:

(1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005). Defendants move to dismiss the infringement claim on two grounds: (1) the use of a jointly owned mark cannot give rise to liability under the Lanham Act; and (2) the claim is time-barred because SCI IT has been using the SCI mark for more than two years. The Court addresses each in turn.

Ownership of unregistered marks is governed by the actual use of the mark in a market, and priority is determined by the first actual use of the mark. *See Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267–68 (4th Cir. 2003); *East West, LLC v. Rahman*, 896 F. Supp. 2d 488, 497 (E.D. Va. 2012). Co-owners of a mark "cannot sue [each] other for infringement" because "[a] co-owner cannot infringe the mark it owns." 2 McCarthy on Trademarks and Unfair Competition § 16:40; *see also Derminer v. Kramer*, 406 F. Supp. 2d 756 (E.D. Mich. 2005); *Piccari v. GTLO Prods., LLC*, No. 14-06701, 2015 WL 3885023, at *4 (E.D. Pa. June 24, 2015). There are no allegations of co-ownership in the Amended Complaint. The Amended Complaint alleges that SCI was founded in 1997 and has been using the SCI mark for its IT consulting services in the Washington, D.C. metro area. SCI IT is an Indian corporation that was not formed until 2000 and was not authorized to do business in Virginia until 2010. Drawing all inferences in favor of SCI, the Amended Complaint alleges SCI actually used the mark in a given market and is the senior user of that mark.

The fact that the Amended Complaint also alleges that SCI IT used the mark with SCI's permission for a number of years does not preclude an infringement claim. As SCI argues in its opposition, trademark licenses can be implied from the parties' course of conduct. *See Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 824 (3d Cir. 2006); *Dept. of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1129 (9th Cir. 2006). "[A] party who holds a valid license to use a trademark and is not in breach of the license cannot be an infringer of the licensed mark." 4 McCarthy on Trademarks and Unfair Competition § 25:30. Use of a mark outside the scope of a license or after a license has terminated is infringement. *Id.* § 25:31 (citing *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.*, 940 F. Supp. 2d 850, 864 (C.D. Ill. 2013)). "After the permission to use the mark has ended, the use of the mark must

cease," and "[t]he terminated dealer who is a 'hold-over' and refuses to change the mark is an infringer." *Id.* As is relevant here, these principles may "apply to make the former licensee or franchisee's continuing use of a former domain name an act of infringement." *Id.* (citing *Passport Health, Inc. v. Travel Med, Inc.*, No. 2:09–cv–01753, 2011 WL 590723 (E.D. Cal. 2011)).

The existence of an implied license is determined "solely on the objective conduct of the parties." *Doeblers'*, 442 F.3d at 824 (quoting *Villanova Univ. v. Villanova Alumni Educ. Found., Inc.*, 123 F. Supp. 2d 293, 308 (E.D. Pa. 2000)). The Court finds SCI has pleaded sufficient facts to give rise to a plausible claim of implied license. *Cf. Diamonds Direct USA, Inc. v. BFJ Hldgs., Inc.*, No. 3:12CV303-HEH, 2012 WL 2505282, at *3 (E.D. Va. June 28, 2012). The Amended Complaint paints a picture of two closely related companies that worked in tandem servicing the same clients and contracts. The complaint also alleges that Shankar authorized SCI IT to do business in Virginia in 2010 for the sole purpose of providing assistance on SCI's contracts. In fact, SCI IT had no other business. Moreover, SCI "established" SCI IT's domain name, <scigrp.com> in furtherance of that goal. The complaint also alleges that "any affiliation between SCI and SCI IT terminated in 2014," but that SCI IT continued to use SCI's mark in a way that deceived the public.

In sum, there is no basis in the complaint for a finding of joint ownership. It may turn out that Defendants are correct, but resolution of their claim is premature without the benefit of discovery.

Defendants' second challenge is that SCI's infringement claim is time-barred. The Lanham Act does not provide an express statute of limitations, but the Fourth Circuit has instructed that "it is proper to use the analogous state limitations period for Lanham Act suits."

7

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011). The parties agree that Virginia's two-year statute of limitations applies.

SCI filed its complaint on July 31, 2015. Thus, any claims that accrued before July 31, 2013 are time-barred. Defendants argue that SCI IT "has been using this website and domain name since it was established in Virginia [in 2010] with SCI's knowledge" and therefore any claims must have accrued then. Mtn. to Dismiss at 9. In response, SCI argues that the relationship between SCI and SCI IT did not terminate until 2014 and thus no claim could have accrued before then.

The Court finds ruling on the statute-of-limitations defense is premature. The Fourth Circuit has cautioned that "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense," and "a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It is only in "the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear on the face of the complaint.'" *Id.* (alterations and emphasis omitted). This case does not present one of those "rare circumstances."

    ii.    *False Advertising*

The Court further finds that dismissal is inappropriate because SCI is correct that the Amended Complaint also states a claim for false advertising. A false advertising claim requires a plaintiff to establish:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC*, 639 F.3d at 120. The Amended Complaint alleges three misrepresentations: (1) SCI IT "touts" the experiences of SCI as its own, (2) SCI IT's "Industries" page on its website lists companies with which only SCI has contracted, and (3) SCI IT asserts that it "works in close concert with . . . [SCI]" despite the termination of "any affiliation" between the two companies. Am. Compl. ¶¶ 133–34. The complaint further alleges that the statements are likely to deceive the public, that SCI IT uses the representations in interstate commerce via its website, and that SCI IT's actions have inflicted competitive and commercial injury on SCI.

Because the Court finds the Lanham Act claim survives the motion to dismiss, a basis remains for federal jurisdiction and remand is unnecessary. The Court now turns to the question of whether declining to exercise its jurisdiction is nonetheless appropriate in this case.

B.  *Colorado River* Abstention

    i.  *Legal Framework*

The general rule in "our dual system of federal and state governments" is that "parallel actions . . . proceed to judgment until one becomes preclusive of the other." *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 462 (4th Cir.2005). The Supreme Court and the Fourth Circuit have held "over and over . . . that in the usual case the federal courts *must* hear the cases that fall within their jurisdiction." *Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 248 (4th Cir. 2013) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The duty to exercise jurisdiction, however, is not absolute . . . ." *Id.* The Supreme

9

Court has identified various instances where abstention may be proper in light of "an important countervailing interest." *Chase Brexton*, 411 F.3d at 462 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). This case implicates only one of those, so-called *Colorado River* abstention—"abstention in favor of ongoing, parallel state proceedings in cases where 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favor abstention." *Id.* at 463 (quoting *Colo. River*, 424 U.S. at 817).

The *Colorado River* abstention analysis proceeds in two phases. The threshold inquiry is whether the pending state and federal suits are parallel. If the suits are parallel, then the district court must "carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Ackerman*, 734 F.3d at 248. The Supreme Court has identified six factors to guide the analysis:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton*, 411 F.3d at 463–64.

### ii. Application

The complaint in the Maryland Action is attached as an exhibit to SCI's Amended Complaint. On a motion to dismiss, the Court may take judicial notice of "documents incorporated into the complaint by reference." *Oberg*, 745 F.3d at 136. After reviewing the Maryland Action, the Court finds the actions are not parallel. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir. 1991). The parties substantially

overlap despite the fact that the Maryland Action has three parties not present here. The claims in the Maryland Action arise out of the same broken relationship between the Rachakondas and Naveen Hota, but the scope of the issues and the remedies sought are not the same. *Cf. New Beckley*, 946 F.2d at 1074 (holding "virtually identical" state and federal actions not parallel because remedies sought and issues raised were not the same). As SCI notes in its opposition, the federal suit is generally about the Rachakondas' breach of their fiduciary duties in their role as officers of SCI. The Maryland suit involves the Rachakondas claims as shareholders of SCI. The "commonality" of issues here does not outweigh the differences. *Cf. Chase Brexton*, 411 F.3d at 465.

Even if the actions were parallel, there are no extraordinary circumstances present that would weigh in favor of abstention here. Defendants concede that the state litigation does not involve a *res* and that there is no inconvenient forum in this case because the parties have "substantial connections to both Virginia and Maryland." Mtn. to Dismiss at 13. Thus, the first and second factors do not support abstention.

Defendants' arguments with respect to the third factor—avoiding piecemeal litigation—range from the generalized risk of "[t]he mere potential for conflict in the results of adjudications," *Chase Brexton*, 411 F.3d at 465, to patent misunderstandings of the Amended Complaint. For example, Defendants assert that by attaching the Maryland complaint as an exhibit to the Amended Complaint, SCI "essentially seeks a declaratory judgment as to Hota's view of this intracorporate family dispute by attacking the Maryland action." Mtn. to Dismiss at 13. The mere attachment of the state-court complaint as an exhibit to the Amended Complaint did not transform the relief sought in the federal action. There is no request for a declaratory judgment in the Amended Complaint.

Defendants also argue that "[b]y asking the Court to award damages based on Naveen[] [Hota's] view of the SCI shareholders' rights and obligations and claiming Defendants' actions purportedly harmed the company, Plaintiff SCI is asking this Court to declare the rights and obligations of the shareholders as well as seeking injunctive relief, a constructive trust and an equitable accounting." *Id.* at 14. As already explained, SCI's claims are not premised on shareholder rights. Nor are SCI's claims premised on the amount of the Rachakondas' ownership interest in SCI. Thus, the Court finds the desirability of avoiding piecemeal litigation does not weigh in favor of abstention.

In considering the fourth factor, the Court looks both to the time of filing and the progress made in the parallel litigations. SCI filed its complaint first, but the Maryland Action has begun the discovery process. Each side accuses the other of gamesmanship in the form of races to the courthouse and artificial attempts to stall the judicial process. Because the two actions were filed relatively close in time and are not substantially far apart in terms of progress, the Court finds this factor is neutral.

The fifth and sixth factors—whether the source of law is federal or state and the adequacy of the state proceedings—do not favor abstention. These factors "typically are designed to justify the retention of jurisdiction where an important federal right is implicated and state proceedings may be inadequate to protect the federal right or where retention of jurisdiction would create needless friction with important state policies." *Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 746 (4th Cir. 2002) (internal quotations and citation omitted); *see also MidAtlantic Int'l, Inc. v. AGC Flat Glass N. Am., Inc.*, 497 F. App'x 279 (4th Cir. 2012). The federal suit alleges the violation of federal law, and while the majority of the claims are state-law claims, they certainly "raise no substantial issues of state law." *Chase Brexton*, 411 F.3d at 466.

Thus, the fifth and sixth factors do not weigh in favor of abstention.

*Colarado River* abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it and that abdication of the obligation to decide cases can be justified under abstention only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Chase Brexton*, 411 F.3d at 463 (internal quotations and alterations omitted). Here, the Court finds no justification for the surrender of its jurisdiction.

## IV. Conclusion

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative to Stay or Remand to State Court. (Dkt. No. 17). An appropriate order will issue.

January 19, 2016
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

13